UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPHINE S. MILLER
    *Plaintiff*

v.

BRIDGEPORT
POLICE DEPARTMENT,
MARK ANASTASI , RUSSELL
LISKOV                          MAY 1, 2014
    *Defendants*

## COMPLAINT

1. Plaintiff is an African-American female who has been a licensed attorney for thirty-three (33) years.

2. Defendant Bridgeport Board of Education is an elected public body with the duty, inter alia, of developing specific policies with respect to the operation of the school system for the City of Bridgeport. .Defendant Board of Education, in carrying out its duties, from time to time engages in contracts for services with members of the public.

3. Defendant Bridgeport Police Department is a municipal entity protecting life and property, preventing crime, enforcing state and local laws and maintenance of order with the City of Bridgeport. .Defendant Police Department, in carrying out its duties, from time to time engages in contracts for services with members of the public.

4. Defendant Mark Anastasi, sued here in his Official and Individual Capacities, in the chief legal officer for the City of Bridgeport and is authorized to approve or disapprove contracts for legal services between the City, its constituent agencies such as the Board of Education and members of the public.

5. Attorney Russell Liskov, sue here in his Official and Individual Capacities, is an attorney in the Office of the City Attorney for the City of Bridgeport.

6. On September 11, 2006 a civil action was filed in federal district court for the District of Connecticut in a matter captioned Lyddy, et al. v. Andrew Cimmino, et al. Case No. 3:06cv01420 (WWE).

7. Pursuant to Conn. Gen. Stat. § 7-101a Andrew Cimmino, a defendant in that action, was entitled to a defense and indemnity by the Bridgeport Board of Education.

8. Cimmino, as Defendant in the federal action, duly selected an attorney to provide legal services on his behalf in the litigation. Cimmino selected Attorney Matthew Hirsch, a Caucasian male, as his attorney.

9. Cimmino selected his own attorney because there was an acknowledged conflict of interest prohibiting his representation by the same attorney representing the Defendant Board of Education.

10. Cimmino was encouraged to select his own attorney because of the acknowledged conflict of interest with the attorneys who had been representing the Board.

11. Since the start of the federal court litigation, Defendant Board of Education has complied with its obligation under C.G.S. § 7-101a by compensating Attorney Hirsch for providing the legal services on behalf of Cimmino.

12. Cimmino contracted with Plaintiff to perform legal services for him in the federal court action.

13.     Cimmino's contract with Attorney Hirsch to perform legal services on his behalf in the federal court action created a right of indemnity for said legal expenses to be paid by Defendant.

14.     Cimmino's contract with Plaintiff to perform legal services on his behalf in the federal court action created a right of indemnity for said legal expenses to be paid by Defendant.

15.     At no time during his representation by Attorney Hirsch did Defendant require Cimmino to first incur legal fees and expenses before he received reimbursement for said legal fees and expenses.

16.     At all times during his representation by Attorney Hirsch, Defendant paid the legal fees and expenses directly to Hirsch.

17.     At all times during his representation by Plaintiff, Defendant refused to pay the legal fees and expenses to Plaintiff.

18.     On February 12, 2010, at the request of Cimmino, Josephine Miller entered an appearance on his behalf. Miller's appearance was in lieu of the appearance of Matthew Hirsch, Cimmino's prior attorney.

19.     On or about January 2010 Plaintiff informed City Attorney Anastasi of the agreement between her and Cimmino to assume his defense in the federal court action.

20.     On or about January 2010 Plaintiff inquired of Anastasi what, if any, conditions existed regarding the city's payment for the legal services to be rendered by her on Cimmino's behalf.

21.     Since on or about January 2010 Anastasi failed and refused to respond to Plaintiff's inquiry.

22. Since on or about January 2010 Anastasi made no effort to dissuade Plaintiff from assuming the duties pursuant to her agreement to represent Cimmino in the federal action.

23. Anastasi was apprised of and was aware of Attorney Hirsch's entry of an appearance on behalf of Cimmino to represent him in the federal court action.

24. On February 12, 2010 Anastasi was apprised in writing and was aware of Plaintiff's entry of an appearance on behalf of Cimmino to represent him the federal court action.

25. On February 12, 2010 Plaintiff specifically apprised Anastasi in writing that she had forwarded to the Finance and Business Office the required vendor forms for purposes of payment for services.

26. Anastasi's refusal to respond to Plaintiff's statement that she had assumed the representation of Cimmino in place of Attorney Hirsch was a tacit admission of Cimmino's right of defense and indemnity to be paid him pursuant to C.G.S. 7-101a.

27. Plaintiff had every expectation, and reasonably relied upon payment to her for her legal services rendered to Cimmino, based upon their unquestioning payment to Attorney Hirsch for his rendition of the same legal services to Cimmino.

28. Since on or about January 2010 Anastasi refused to provide any information to Plaintiff regarding any scope of representation letters or letter agreements for attorneys who perform legal services for city employees under Conn. Gen. Stat. § 7-101a.

29. Since February 12, 2010 and continuing to date, Plaintiff has performed legal services on behalf of Andrew Cimmino in the federal court litigation. These legal

services included drafting of pleadings, review of documents, development of legal strategy, filing of a motion for summary judgment, and attendance at court hearings.

30. Plaintiff performed valuable services for the Defendant in fulfilling its statutory obligation to defend and indemnify Andrew Cimmino in the federal court litigation.

31. In all material respects the legal services performed by Plaintiff for Cimmino were substantially similar to those performed by Attorney Hirsch.

32. On March 31, 2010, April 30, 2010 and May 31, 2010 Plaintiff submitted invoices to Defendant Board of Education for legal services performed.

33. On and after February 15, 2010 Defendant Board of Education was apprised that Plaintiff had completed the required vendor forms and W-9 form to the Finance and Business Office.

34. In fact, the vendor forms for purposes of payment for services were forwarded to Plaintiff by employees of Defendant Board of Education's Finance and Business Office.

35. Defendant Board of Education's failure to object in the face of the facts recited above constituted a tacit admission that Plaintiff was authorized to continue the representation of Cimmino and that they would continue to directly pay her for the legal services performed as they had done for Attorney Hirsch.

36. Defendant has failed and refused to pay Plaintiff for the valuable legal services performed.

37. Defendant has paid Caucasian attorneys for the legal services performed by them, unlike its refusal to pay for such services performed by Plaintiff.

38. Defendants paid Attorney Matthew Hirsch, Caucasian male, for the services performed by him in representing Cimmino.

39. Attorney Matthew Hirsch, Caucasian male, is a practitioner with an employment law specialty.

40. Plaintiff, an African-American female, is a practitioner with an employment law specialty.

41. Cimmino personally selected Attorney Hirsch to represent him in the federal court action pursuant to Conn. Gen. Stat. § 7-101a.

42. Cimmino personally selected Plaintiff to represent him in the federal court action pursuant to Conn. Gen. Stat. § 7-101a.

43. Defendants permitted Attorney Hirsch to represent Cimmino after his selection by Cimmino without further question.

44. Defendants refused to permit Plaintiff to represent Cimmino after her selection by Cimmino.

45. At all times material herein Plaintiff was similarly situated in all material respects to Attorney Hirsch in that she performed valuable legal services, as did Hirsch, on behalf of Cimmino in the federal court action.

46. Defendant Board of Education and Anastasi maintained a policy, practice, and custom of engaging only non-African-American attorneys and law firms to perform legal services.

47. Defendants have no African-American attorneys who perform legal services for it pursuant to Conn. Gen. Stat. § 7-101a.

48. Records of Defendant Board of Education show no African-American attorneys who perform legal services for it pursuant to Conn. Gen. Stat. § 7-101a.

49. The conduct of Defendant has deprived Plaintiff of the same right to make and enforce contracts as is enjoyed by white citizens.

50. On December 2, 2009 a civil action was filed in superior court for the Judicial District of Fairfield at Bridgeport in a matter captioned John Gale v. Gilberto Valentin. Docket No. FBT-CV09-6005032S.

51  . Pursuant to Conn. Gen. Stat. § 7-101a Gilberto Valentin, a defendant in that action, was entitled to a defense and indemnity by the Bridgeport Office of City Attorney and Bridgeport Police Department.

52. Defendant Valentin duly notified the Bridgeport Office of City Attorney of the pendency of the lawsuit.

53. On December 8, 2009 a notice of appearance was filed on behalf of Defendant Valentin by Assistant City Attorney John Mitola.

54. On the same date Attorney Mitola filed a motion to withdraw his appearance as filed, claiming that it had been mistakenly filed. No further action was taken by the Assistant City Attorney on this matter.

55. On or about January 2010 Defendant Valentin notified the City Attorney's Office that he believed there to be a conflict of interest because of a pending claim of discrimination that he then had against the Police Department arising out of the same common nucleus of facts that were the subject matter of the John Gale lawsuit. As a result of Valentin's service in the Internal Affairs, his involvement in certain high profile cases including the John Gale incident, Valentin filed a complaint against the Police Department with Special Master William Clendenen claiming discrimination and

retaliation. That complaint of discrimination and retaliation remained pending at the time Plaintiff filed her appearance on behalf of Sgt. Valentin.

56. On or about January 2010 Valentin notified the Office of the City Attorney that he desired Attorney Josephine Miller to represent him in this matter. Despite Valentin's request, as well as several requests for clarification from Attorney Josephine Miller, absolutely no response was made to Valentin by the City Attorney's Office.

57. Valentin selected his own attorney because there was an acknowledged conflict of interest prohibiting his representation by the Office of the City Attorney since the suit involved two Bridgeport Police officers.

58. Attorney Miller requested in writing that she be notified by the Office of City Attorney what, if any, terms and conditions existed for her representation of Valentin. Attorney Miller received no response.

59. Valentin contracted with Plaintiff to perform legal services for him in the state court action.

60. Vaelntin's contract with Attorney Miller to perform legal services on his behalf in the state court action created a right of indemnity for said legal expenses to be paid by Defendant Police Department and Office of the City Attorney.

61. Accordingly, on March 26, Attorney Miller filed a notice of appearance on behalf of Valentin and filed an Answer and Counterclaim, Objection to Request to Revise, served Interrogatories and Requests for Production and attendance at court in that matter.

62. Since March 26, 2010 and continuing to date, Plaintiff has performed legal services on behalf of Gilberto Valentin in the superior court litigation. These legal

services included drafting of pleadings, review of documents, development of legal strategy and court attendance.

63. On December 9, 2013 Gale withdrew the complaint against Valentin in its entirety. Similarly Valentin withdrew his counterclaim against Gale.

64 . Plaintiff performed valuable services for the Defendant Bridgeport Police Department in fulfilling its statutory obligation to defend and indemnify Gilberto Valentin in the Gale court litigation.

65 Nine (9) months after receiving notice of Plaintiff's civil action, the City Attorney directed the appointment of counsel to represent Valentin.

66. On August 9, 2010 Assistant City Attorney John Mitola corresponded by letter directly with Sergeant Valentin.

67. Plaintiff was copied on a letter from Attorney Mitola to the "appointed" counsel.

68. In that letter Attorney Mitola falsely asserted that the Office of the City Attorney "is *presently defending* on your behalf".

69. In actuality, as noted above, Mitola had filed an appearance and then moved to withdraw that appearance claiming that it had been mistakenly filed.

70. Attorney Mitola then again falsely asserted that Valentin had "*recently expressed* a concern that the Office of the City Attorney may have a conflict with respect to representing" Valentin.

71. In actuality some eight (8) months had passed since Valentin had expressed his concern about the conflict of interest.

72. Assistant Attorney Mitola acknowledged the obligation of the city under Conn. Gen. Stat. § 7-465 and § 7-101a to provide a defense and indemnity to Valentin

because the conduct that forms the basis for Gale's complaint arises in the course and scope of Valentin's employment by the Police Department.

73     . Further, during the four and one-half (4 1/2) months preceding Attorney Mitola's letter of Plaintiff's client, it was the Plaintiff rather than the Office of the City Attorney who had presented a defense for Valentin.

74.     Attorney Mitola admitted in his letter to a potential conflict of interest.

75.     After recognizing the potential conflict of interest, Attorney Mitola then presumed to appoint counsel of his own choosing for Valentin.

76.     On August 12, 2010, at the direction of City Attorney Mark Anastasi, a notice of appearance was filed by an attorney with the law firm of Berchem, Moses & Devlin, on behalf of Gilberto Valentin.  The appointed attorney was a Caucasian male.

77.     Attorney Mitola and the Bridgeport Office of City Attorney nonchalantly left Valentin hanging for months despite knowing that an action against Valentin was pending and taking no appropriate action to provide a defense.

78.     Attorney Mitola and the Office of the City Attorney offered absolutely no reason why the defense that had been presented by Plaintiff on behalf of Valentin was unacceptable.

79.     At the direction of the Bridgeport Office of City Attorney, the Caucasian male Berchem Moses attorney undertook to represent Valentin without his consent and indeed without ever speaking with him.

80.     Given that the law firm of Berchem, Moses & Devlin bills itself as a *management defense* firm there was question whether the attorney's representation of Valentin would have been fair and impartial.

81. Especially in a case where the indemnitor (i.e. City of Bridgeport) had done a "reservation of rights", there was a conflict that warranted separate and independent counsel for Valentin.

82. Because Valentin was already represented by Plaintiff, Attorney Mitola was not privileged to communicate with Valentin, bypassing Plaintiff, regarding the subject matter of the litigation.

83. The letter of Attorney Mitola to Valentin was a thinly veiled threat that the City would refuse to indemnify Valentin, in an apparent attempt to cause him to accept their chosen counsel to represent him.

84. On August 18, 2010 the Berchem Moses attorney withdrew his appearance on behalf of Sgt. Valentin, whom he had never communicated with. The withdrawal came after a motion to strike was filed by Plaintiff on behalf of Valentin.

85. On August 30, 2010 and December 10, 2013 Plaintiff submitted an invoice for legal services to Defendant Office of City Attorney for payment regarding the legal services performed on behalf of Valentin.

86. At all times during his representation by Plaintiff, Defendant refused to pay the legal fees and expenses to Plaintiff.  To date Defendant Office of City Attorney has failed and refused to pay Plaintiff for the valuable legal services performed.

87. Defendant Police Department and Office of the City Attorney refused to permit Plaintiff to represent Valentin after her selection by Valentin.

88. At all times material herein Plaintiff was similarly situated in all material respects to the Berchem Moses Attorney in that she performed valuable legal services, as the Caucasian Berchem Moses attorney would have performed.

89. Defendant Police Department and Anastasi maintained a policy, practice, and custom of engaging only non-African-American attorneys and law firms to perform legal services pursuant to C.G. S. § 7-101a.

90. On or about October 22, 2013 Plaintiff had a conversation with Assistant City Attorney Errol Skyers regarding a civil action that was about to be tried in the Judicial District of Fairfield at Bridgeport in the matter of Powell v. Bridgeport Board of Education.

91. Plaintiff and Attorney Skyers were at the superior court located at 1061 Main Street in the courtroom before meeting with the presiding judge.

92. Attorney Skyers stated to Plaintiff that her name was on a "no pay" list as regards the Bridgeport Office of the City Attorney. Attorney Skyers stated that this "no pay" list meant that Plaintiff was an attorney with whom the Office of the City Attorney would not settle any case.

93. Plaintiff inquired as to why an attorney such as herself would be placed on a "no pay" list.

94. Attorney Skyers stated that certain attorneys who have multiple cases against the City of Bridgeport would not be permitted to have their cases settled under any circumstances. Attorney Skyers elaborated by stating that there were also attorneys for whom the GA court had a list of those with whom they would not deal at all.

95. On or about October 7, 2013 a current client of Plaintiff telephoned her to inform her that he had just had a conversation with Assistant City Attorney Russell Liskov.

96. The client had contacted Attorney Liskov at the suggestion of Plaintiff because the client had been named as an individual defendant along with the City of Bridgeport in a civil action.

97. Plaintiff's client informed Attorney Liskov that he believed there would be a conflict of interest for the City Attorney's office to represent him because he had been terminated by the city, had filed a complaint of discrimination with the Commission on Human Rights & Opportunities, and was about to file an action in federal court alleging discrimination and retaliation under the Civil Rights Acts.

98. In response to the client's statement of a potential conflict of interest, Attorney Liskov questioned what attorney would be representing the client. Plaintiff's client then informed Attorney Liskov that he would be represented in the federal lawsuit by Attorney Josephine Miller.

99. Attorney Liskov then stated to Plaintiff's client that he should not utilize her services to represent him. He informed Plaintiff's client that Attorney Miller won big verdicts but that she was often reversed on those decisions. Attorney Liskov then stated to Plaintiff's client that he should utilize the services of Attorney Thomas Bucci to handle the federal lawsuit that he was planning to file. Attorney Liskov further informed Plaintiff's client that there were some attorneys with whom the city did not settle cases and that Plaintiff was one of those attorneys.

100. Attorney Liskov's statement to Plaintiff's client that Attorney Bucci was someone with the city did reach settlements was intended to have the effect of causing Plaintiff's client to discontinue the use of her legal services.

101 . At the time of the statements of Attorney Liskov, Plaintiff had an existing contract for legal services with the client.

102. Attorney Liskov knew, or should have known, that the client was represented by Plaintiff because Plaintiff had been representing the client before the Commission on Human Rights & Opportunities for more than a year. Further Attorney Liskov knew of the contractual relationship between the client and Plaintiff when the client informed him that Attorney Miller would be filing the civil action in federal court on his behalf.

103. At the time of his statement that the client should not utilize Plaintiff's services, Attorney Liskov had no justification for his action.

104. The conduct of Attorney Liskov was intended to interfere with the business relationship between Plaintiff and her client.

105. The statements of Attorney Skyers, coupled with that of Attorney Liskov is evidence of a plan, and purpose of the Office of the Bridgeport City Attorney to interfere with Plaintiff's business relationships with current clients by informing them of their unwillingness to settle any cases that may be handled by her on their behalf.

106. The statements, actions and conduct of multiple members of the Bridgeport Office of City Attorney are malicious and has interfered with her existing client relationships.

107. The statements, actions and conduct of multiple members of the Bridgeport Office of City Attorney has resulted in actual loss to Plaintiff.

108. The Defendant municipal agencies, municipal officers, municipal attorneys and outside attorneys conspired with each other to achieve the deprivation of the plaintiff's equal rights under the law.

109 . The Defendant municipal agencies, municipal officers, municipal attorneys and outside attorneys committed overt acts in furtherance of such conspiracy, including but not limited to the following acts: Defendant municipal agencies refused to compensate Plaintiff for valuable legal services performed by her on behalf of city employees while compensating Caucasian attorneys for the same or similar legal services; Defendant municipal officers and attorneys placed Plaintiff on a "no pay" list in order to discourage clients from utilizing Plaintiff; Defendant municipal officers and attorneys tortuously interfered with Plaintiff's business relationship with her clients in order to discourage them from utilizing her services; Defendant municipal attorneys encouraged Plaintiff's clients to utilize a Caucasian attorney with whom they would prefer to deal while discouraging said clients from utilizing Plaintiff; Defendant municipal officers and attorneys instructed an outside attorney to file an appearance and represent Plaintiff's client when they knew that he was being represented by Plaintiff; Defendants maintained a policy, practice and custom and not retaining similarly situated African-American attorneys to perform legal services pursuant to C.G.S. § 7-101a..

1108. Each conspirator entered into such conspiracy based upon their desire to damage Plaintiff in the making and enforcing of her right to contract in the same manner as Caucasian attorneys.

111.  As a result of such conspiracy and overt acts taken in furtherance of the conspiracy, the plaintiff was deprived of her civil rights to engage in the making and enforcing of contracts as are Caucasian citizens.

112.  As a result of the conspiracy and overt acts taken in furtherance of the conspiracy, the plaintiff has suffered economic loss, damage to reputation, and emotional distress and injury.

113.  As a result of such conspiracy and overt acts taken by conspirators, each party to the conspiracy is liable for the overt acts of the co-conspirators.

**COUNT ONE:**     **42 U.S.C. § 1983, 1981 (Race Discrimination) (As to Bridgeport Police Department, Office of the City Attorney and Anastasi in his Official Capacity)**

1 – 113 Paragraphs 1 - 113 are hereby incorporated by reference and made paragraphs 1-113 of this Count One.

114.  By the conduct alleged Defendant Bridgeport Police Department and Mark Anastasi in his Official Capacity has discriminated against Plaintiff in the making and enforcement of contracts.

115.  By the conduct alleged in paragraphs 1 – 111 Defendants have maintained a policy, practice and custom of discriminating against African-American attorneys such as Plaintiff in the making and enforcing of contracts.

116.  Plaintiff has been damaged thereby.

**COUNT TWO:**     **42 U.S.C. § 1983, 1981 (Race Discrimination) (As to Anastasi in his Individual Capacity)**

1 – 113     Paragraphs 1 - 113 are hereby incorporated by reference and made paragraphs 1-113 of this Count Two.

114. By the conduct alleged Defendant Mark Anastasi in his Individual Capacity has discriminated against Plaintiff in the making and enforcement of contracts.

1115.  Plaintiff has been damaged thereby.

**COUNT THREE:** (Quantum Meruit) (As to Bridgeport Police Department and Office of City Attorney)

1 – 113   Paragraphs 1 - 113 are hereby incorporated by reference and made paragraphs 1-113 of this Count Three.

114.   By the conduct alleged in paragraphs 48 – 87 Defendant Bridgeport Police Department and the Office of City Attorney have received the benefit of Plaintiff's legal services and Plaintiff is entitled to the reasonable value of the services performed.

115.   Plaintiff has been damaged thereby.

**COUNT FOUR:** (Unjust Enrichment) (As to Bridgeport Police Department and Office of City Attorney)

1.   Paragraphs 1-113 of the First Count are incorporated by reference as paragraphs 1-113 of this Count Three

114.   By failing and refusing to pay Plaintiff for the legal services performed defendants have received a benefit; Defendants Police Department and Office of City Attorney unjustly did not pay Plaintiff for the benefits, and the failure of payment was to Plaintiffs' detriment.

115.   Defendants Police Department and Office of City Attorney have been unjustly enriched by their wrongful refusal to compensate Plaintiff for the legal services performed for Defendants.

116. Plaintiff was damaged thereby.

**COUNT FIVE:** (Tortuous Interference with Contract) (As to Mark Anastasi, and Russell Liskov in Their Individual and Official Capacity)

1. Paragraphs 1-113 of the First Count are incorporated by reference as paragraphs 1-113 of this Count Five.

114. The statements, actions and conduct of multiple members of the Bridgeport Office of City Attorney, as alleged in paragraphs 1-113, including specifically paragraphs 88 – 105, were wrongful, malicious and tortuously interfered with Plaintiff's contract with her clients.

115. The statements, actions and conduct of multiple members of the Bridgeport Office of City Attorney, as alleged in paragraphs 1-113 including specifically paragraphs 88 – 105, have resulted in actual loss to Plaintiff.

116. Plaintiff has been damaged and continues to be damaged thereby.

**COUNT SIX:** (42 U. S. C. § 1985 (3) Civil Conspiracy) (As to Office of City Attorney, Bridgeport Board of Education, Bridgeport Police Department, Mark Anastasi, and Russell Liskov in Their Individual and Official Capacity)

1. Paragraphs 1-113 of the First Count are incorporated by reference as paragraphs 1-113 of this Count Six.

114. Each of the Defendants was acting under color of law when they engaged in the conduct alleged in paragraphs 1-113.

115. Defendants engaged in the conduct alleged in paragraphs 1 – 113 for the express purpose of interfering with Plaintiff's and other African-American attorney's rights to make and enforce contracts as protected by U. S. C. §§ 1983, 1981 and the fourteenth amendment to the U. S. Constitution.

116. The intent of the Defendants and others in the legal community was to deprive Plaintiff of her ability to make and enforce contracts for legal services and to persuade others to not utilize her legal services.

117. Defendants engaged in the above acts as some of the steps in a conspiracy to deprive Plaintiff of her clear and established rights secured by the state and federal constitutions or laws of the United States and/or the State of Connecticut, and thereby deprived her of those rights and caused her injuries.

118. There was a meeting of the minds of the named Defendants and others in the legal community, to wit, the Berchem Moses attorney, to deprive Plaintiff of her rights under the laws of the U. S. and the State of Connecticut.

119. Plaintiff has alleged certain facts related to this cause of action in a civil action now pending before the United States District Court for the District of Connecticut in 3:12CV-01287 (VLB).

120. Plaintiff has been damaged thereby.

**WHEREFORE**, Plaintiff prays that the Court grant such relief as may be deemed appropriate, including but not limited to:

(a) Compensatory damages;

(b) Double damages as to counts 1 and 2 pursuant to C.G.S. Sec. 52-568.

(c) Attorneys fees

(d) Such other relief as the court deems proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues.

FOR THE PLAINTIFF

        JOSEPHINE SMALLS MILLER
By:   /s/*JOSEPHINE S.MILLER*
Josephine Smalls Miller, FED BAR # ct27039
152 Deer Hill Avenue, Suite 302
Danbury, CT 06810
Tel: (203) 512-2795
Email: jmillerlaw@sbcglobal.net